UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHARPER IMAGE CORP., a Delaware corporation,

Plaintiff,

v.

THE MAY DEPARTMENT STORES CO., IONIC PRO, LLC, et al,

Defendants.
______________________________/

No. C 04-0824 CW (WDB)

**ORDER RE SIX CONSOLIDATED MOTIONS TO COMPEL DISCOVERY AND PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

On October 4, 2005, the court heard oral argument in connection with the parties' motions, docket numbers 202, 208, 220, 227, 232, 237, and 241.

Although the court grants certain requests for information, the court denies many of the parties' requests because, in our view, the parties seek information about matters at the periphery of these proceedings. The court's denials do not leave the parties in an informational vacuum. The court denies those requests related to matters on the periphery based on the understanding that there has been, or promptly will be, full disclosure of information directly related to the products at issue (the Ionic Breeze Quadra ("IBQ") and the Ionic Pro ("IP"))[1], and to the claims within the patents at issue.

The October 4th hearing consumed three hours and included substantial discussions between the court and the parties pertaining to, among other things, the

[1] To avoid confusion, in this order we will refer to Ionic Pro, LLC as "defendant Ionic Pro" and will refer to the product it manufactures (also called "Ionic Pro") as "IP."

parties' legal theories and their contentions about what the evidence will show. These extensive discussions significantly informed the rulings that follow. Because counsel participated directly in these recorded discussions there is no need to reproduce them here.

With one exception, the court has not set deadlines for production of the materials the court orders the parties to produce. To the extent information ordered disclosed has not already been produced, the producing party MUST PROMPTLY DELIVER such information to the opposing party.

The court RULES that, except for purposes of impeachment, no party may use any document or information at trial that the party did not disclose to the opposing party during discovery.

For the reasons set forth in full during the hearing, the court ORDERS as follows.

DEFENDANTS' MOTION TO COMPEL FINANCIAL AND MARKETING INFORMATION FOR ALL SHARPER IMAGE ("SI") IONIC AIR PURIFIERS AND COMPLETE UNREDACTED SETTLEMENT AGREEMENTS - (D.N. 208)

1. Defendants seek information relevant to the determination of a "reasonable royalty." Hypothetical royalty negotiations would have taken place in January 2004. The court, therefore, FINDS that the reasonable royalty theory cannot support the discovery of events, communications, or developments occurring after February 1, 2004.

2. Financial and marketing information relating to any SI product that does not practice the '484 invention would provide little, if any, information helpful to assess a "reasonably royalty." Except as follows, the court DENIES defendants' request for financial and marketing information pertaining to products not practicing the '484 patent.

SI represented that it manufactured two ionic air purifiers that did not practice the '484 patent. The first product was the Ionic Breeze Air Purifier which was manufactured from late 1998 through 2000. The second product was the original version of the IBQ, manufactured from approximately January 2000 to July 2000. The court FINDS that comparing the sales and profitability of these two products to the sales and profitability

of the version of the IBQ that does practice the '484 invention could shed light on the value added by the '484 invention. Therefore, the court GRANTS defendants' request for sales and profitability information for the Ionic Breeze Air Purifier and the first iteration of the IBQ.

3. The court GRANTS defendants' request for financial and marketing information relating to SI products that do practice the '484 invention as follows.

SI must produce financial and marketing information pertaining to the IBQ for the period from July 2000 (when the '484 technology was added) to the date SI added the "bead lifter" mechanism.

SI must produce financial and marketing information pertaining to the Ionic Breeze Germicide Protection product[s]. Such information could be helpful to the extent defendants can 'factor out' the value added by the 'germicidal' ultraviolet light that is not found in IBQs.

The court DENIES defendants' request for financial and marketing information pertaining to SI's "professional series" air purifier products. These products were first manufactured toward the end of 2004, well after the hypothetical "reasonable royalty" negotiation would have been concluded. Moreover, because the professional series products contain multiple features not found in IBQs, it is unlikely that sales and profitability information about these products could serve as a basis for reliable findings about the value added by the '484 invention.

4. Defendants also seek financial and marketing information to challenge SI's claim for "lost profits" relating to alleged infringement of the '484 patent. The court FINDS that the relevant period for considering lost profits under the '484 utility patent is April 14, 2004, (the date SI notified defendants that the first generation IP was allegedly infringing) to August 23, 2004 (apparently the last day any defendant sold a first generation IP).

Although SI has produced some financial and marketing information, defendants complain that this information is not product specific. The court GRANTS defendants' request for product specific information. SI must generate and produce sales, cost, and

marketing information that is specific to the Ionic Breeze Air Purifier, the original version of the IBQ, and to the floor and table top versions of the IBQ manufactured beginning in July 2000. The court also ORDERS the parties to meet and confer to identify what additional information, if any, defendants and/or their experts need to fairly evaluate SI's claim for lost profits. To the extent that plaintiff contends that it already has disclosed the information defendants are seeking, counsel for plaintiff must show counsel for defendant (or defendant's expert) where that information is (i.e., locate that information in previously made responses to discovery).

Defendants have not demonstrated sufficient probability that factors internal to SI may have impaired SI's sales of the IBQ during the relevant period. The court DENIES defendants' request for discovery that is premised on this speculation.

5. Because defendants have not demonstrated that information relating to advertising of SI products that do not share the IBQ's trade dress would shed probative light on whether the IBQ's trade dress had acquired secondary meaning, the court DENIES defendants' request for information relating to advertising of products that do not share the IBQ's trade dress. However, SI must produce all financial data, product development data, testing data, marketing and advertising information with respect to the IBQ.

6. Defendants also seek unredacted versions of various settlement agreements and licenses.

To the extent it has not already done so, SI must produce all terms of the Brookstone settlement agreement that have implications for the air purifier market, even if those terms also have implications for markets for other products.

SI must disclose the Honeywell settlement agreement's lump sum payment.

The court DENIES defendants' request for production of settlement agreements pertaining to other SI products.

DEFENDANTS' MOTION TO COMPEL MORE INFORMATION REGARDING SI's PRODUCTS (D.N. 227)

7. The court DENIES defendants' request for "design and development" information relating to products other than the IBQ and IBQ-compact. Because other products do not share the IBQ's trade dress, the potential probative utility of such information does not outweigh the burdens associated with responding.

The court GRANTS defendants' request for design, development, sales and script information relating to the IBQs (IBQ and IBQ-compact).

8. The court DENIES defendants' request for "channels of trade" information for products that do not share the IBQ's trade dress or practice the patents in suit; "channels of trade" information for such products is not sufficiently likely to yield relevant information regarding "consumer confusion."

SI must disclose whether it exercises control over how non-SI retailers present IBQs at the point of purchase to potential buyers. If SI exercises control over such presentations, it also must disclose how such retailers present IBQs for sale.

9. Defendants seek marketing studies and marketing plans for all SI air purifier products - purportedly to challenge SI's claims for lost profits and a reasonable royalty. The court DENIES defendants' request for marketing studies and plans pertaining to air purifier products other than the IBQs. The likelihood that such information would be probative does not justify the burden and intrusion that would be occasioned by compelling disclosure.

DEFENDANTS' MOTION TO COMPEL "PROPER" RESPONSES TO WRITTEN DISCOVERY (D.N. 232)

10. The court DENIES defendants' request for design, development, and/or testing documents related to SI's air purifier products that do not practice the patented inventions or share the IBQ's trade dress. Given SI's affirmation on the record that it does not sell any product intended by SI to pursue some part of the market that the IBQs

are intended to pursue, such information is not sufficiently likely to yield probative value to justify its production.

The court GRANTS defendants' request for documents related to design, development and/or testing the invention in the '484 patent before February 1, 2004 (the cut off date for hypothetical royalty negotiations). Such information could have informed SI's judgments about the real value of the invention during royalty negotiations.

11. SI confirmed on the record that it has disclosed the identities of all the inventors of the patents in suit.

12. Defendants seek "narrative" answers to certain interrogatories. Because defendants can obtain the information sought more effectively through the disclosures required by the court's local patent rules and expert testimony, the court DENIES this request.

13. **By October 18, 2005**, SI must identify every instance of alleged "mimic advertising," by any defendant and must identify the SI advertisement that the mimic allegedly imitates.

The court PROHIBITS SI from using at trial any purportedly mimicking advertisement that it does not disclose along with the allegedly mimicked SI advertisement.

14. The court DENIES defendants' request for responses to Target's interrogatories numbers 20-24. Defendants seek responses to what amount to contention interrogatories, and only speculation supports the suggestion that responses would yield useful information.

15. SI confirmed on the record that it has disclosed all products (manufactured by anyone) that have competed with IBQs from January 2002 through the present. The court ORDERS SI to revisit this matter and to confirm that it has identified all such competing products.

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (D.N. 241)

16. SI's Motion for Protective Order overlaps extensively with defendants' Motion to Compel Substantive Responses (D.N. 237). Therefore, we address many issues raised by docket number 237 in this section. We address additional issues raised by that motion in the following section.

SI produced Mr. Schultz as a witness pursuant to F.R.C.P. 30(b)(6). During Mr. Schultz's deposition, SI's counsel instructed the witness not to answer on the ground that certain questions sought information that is irrelevant and would reveal matters of competitive sensitivity. SI now seeks a protective order preventing plaintiff from having to disclose the information sought by these questions.

The court ORDERS that, in future depositions, in this case, when counsel has instructed a witness not to answer, the parties must complete the deposition with respect to all remaining subjects. Within a few days after the deposition concludes, the party who instructed the witness not to answer must file a motion for a protective order. If appropriate, the party who asked the unanswered questions may promptly file a motion for sanctions. The motion for sanctions, if any, will be heard jointly with the motion for protective order.

The court RULES on the types of information that SI must produce but does not specify the discovery mechanism by which this information will be transmitted to defendants. The parties must meet and confer to determine the fairest, most efficient way to produce the kinds of information we here order SI to produce.

17. Defendants seek information regarding consumer confusion between any SI ionic air purifier and any ionic air purifier sold by a third party. The court FINDS that the following categories of potential confusion could provide relevant information about consumer confusion, distinctiveness, and/or secondary meaning with respect to the trade dress claim: (1) instances in which consumers look at SI ionic air purifiers and think that a manufacturer other than SI made them, (2) instances in which consumers look at ionic air purifiers manufactured by defendant Ionic Pro or another manufacturer other than

SI and think SI manufactured them, and (3) instances in which consumers look at the IP and the IBQ and think they are the same product or manufactured by the same company.

SI must produce evidence related to each of these categories where the confusion involves an IBQ or any other product that competes for the same market niche as the IBQ (whether the product is a floor unit or a table top model).

18. Defendants seek information regarding consumer and retailer complaints about SI products that practice the '484 patent. The court FINDS that such complaints could provide information relevant to determining a reasonably royalty. The court ORDERS SI to disclose consumer and retailer complaints that may relate to the '484 patent and any complaints about IBQs that relate to noise. All complaints about noise should be produced unless the complaint is clearly ascribed to something unrelated to the '484 patent from the period between July 2000 (when the IBQ began practicing the '484 technology) and February 1, 2004 (the cut off for hypothetical royalty negotiations).

19. Defendants seek testimony and written discovery about prior legal proceedings involving the patents in suit, trade dress infringement, trademark rights, and unfair competition. The court ORDERS SI to identify every lawsuit in which the '484 invention is in issue, every lawsuit from January 2000 to the present in which the IBQ's trade dress is in issue, and every lawsuit in which the '494 patent is in issue. SI must identify these lawsuits by disclosing the case name (style of case), date of filing, docket number, and the court in which the action was filed.

20. Defendants assert that SI made statements about the IBQ's performance and/or the IP that were false or reckless, and that SI knew to be false or made recklessly, in order to interfere with defendants' prospective economic advantage. Defendants seek evidence about these statements, including evidence of testing conducted within SI that would show that SI knew that its representations about the products' performance were false. Defendants were unable to identify any non-speculative basis for their position that SI lied about these matters or made reckless representations about them. Therefore, the court DENIES defendants' request for information pertaining to the alleged falsity of SI's product representations.

21. The court DENIES defendants' request that the court compel SI to designate a 30(b)(6) witness to testify about studies of consumer confusion and about the degree of care exercised by consumers purchasing SI ionic air purifiers. Such information is more appropriately obtained from expert witness testimony or can be learned without discovery.

SI also confirmed on the record that it has disclosed the only survey it has conducted related to these issues.

22. SI confirmed that it has disclosed all information it has about the design, development, or engineering of its products that practice the '484 invention.

23. Defendants seek information about SI's gains and losses in the IBQ market niche. SI represented that it has disclosed all such information. Deposition of SI's damages expert is a more appropriate vehicle for obtaining such information than is a "30(b)(6)" deposition. If, after deposing SI's damages expert, and after meeting and conferring with plaintiff to obtain the information, defendants seek additional information they may renew their motion to compel as to this issue.

24. Defendants also seek information about alleged lost sales or injury to SI's reputation that SI attributes to defendants' conduct. SI must disclose its position about the number of IP units sold that SI believes would have been sales captured by SI based on SI's market share in this niche.

DEFENDANTS' MOTION TO COMPEL SUBSTANTIVE RESPONSES TO DISCOVERY REQUESTS (D.N. 237)

25. The court DENIES defendants' request for identification of persons and documents SI consulted in responding to defendants' interrogatories. Such a request is unlikely to produce any probative information and responding to it would impose an intrusive burden.

PLAINTIFF'S MOTION TO COMPEL (D.N. 202)

26. Defendants intend to assert an "advice of counsel" defense, relying upon two opinions written by their counsel, Gardner Groff (the April 5th and August 12th opinions). Plaintiff seeks information about communications between Mr. Groff or Irell & Manella, on one hand, and the defendants, on the other.

The court RULES that defendants MUST PRODUCE all of Gardner Groff's work product, whether or not communicated to defendants, relating to the subject of his April 5th and August 12th opinions. Defendants must contact Mr. Groff to obtain all work product not communicated to defendants.

The court ORDERS defendants to produce pre-litigation communications between Irell & Manella and defendants, if any, that were related to the Gardner Groff April 5th and August 12th opinions.

SI also seeks post-litigation communications between Irell & Manella and Gardner Groff and post-litigation communications between Irell & Manella and defendants. The court DENIES SI's request except to the extent that there are post-litigation communications that reflect comments (1) by Gardner Groff on subjects addressed in the April 5th or August 12th letters (2) that reached a defendant. Defendants confirmed on the record that there are no such communications.

27. The court RULES that defendants' production of the May 21st Gardner Groff opinion (an opinion on which defendants do not intend to rely) does not effect a waiver with respect to communications relating to the '484 patent and the second generation IP.

28. Defendants represented on the record that they do not intend to rely on the two opinions from the law firm Sutherland, Asbill.

29. The court DENIES SI's motion to compel defendants to produce opinions from defendants' "advice" counsel pertaining to invalidity of the '484 and '494 patents.

30. Defendants instructed Mr. McConnell not to answer certain questions at his deposition on the ground that those questions invaded the attorney client

privilege. SI asks the court to compel defendants to re-produce Mr. McConnell for deposition and to compel him to answer the unanswered questions.

The court ORDERS defendants to disclose all communications from "advice" counsel relevant to the issue of willfulness. The parties must meet and confer to determine whether Mr. McConnell or Mr. Wasserman is the more appropriate source of information with respect to this issue.

31. The court RULES that an adequate privilege log must contain the following information: (1) the date the communication was made or the document was generated, (2) the authors and the capacity in which they were functioning at the time they made the communication or generated the document, (3) all recipients and the capacity in which they were functioning for purposes of receiving that communication or document, (4) all persons copied with the document and/or with whom the communication was in any way shared, (5) the subject, sufficiently described to enable the reader to understand whether the privilege attaches, and (6) the purpose of the communication, sufficiently described to enable the reader to understand whether the privilege attaches.

PLAINTIFF'S MOTION TO COMPEL FINANCIAL DOCUMENTS FROM ALL DEFENDANTS, LICENSE AGREEMENTS, AND ATTACHMENTS TO E-MAILS (D.N. 220)

32. The court DENIES plaintiff's request for financial information from Ideal Pro, LLC, Sylmark, LLC and Sylmark Inc. The parties must meet and confer to resolve any disputes regarding access to financial documents relevant to accurately identify damages.

33. Plaintiff seeks license agreements, assignments of rights, or royalty contracts as between defendants or with third parties involving the accused product. The court ORDERS defendants to produce all such documents dated prior to February 1, 2004. This order encompasses any kind of contract or arrangement that

reflects the value that IP or its related entities received from the eventual marketing of the IP product.

34. The court DENIES plaintiff's request for twenty attachments to e-mail messages previously disclosed by defendants. Defendants' counsel represented to the court that the attachments contain no relevant information.

IT IS ORDERED.

Dated: October 14, 2005

/s/ Wayne D. Brazil
WAYNE D. BRAZIL
United States Magistrate Judge

Copies emailed to:
parties,
CW, WDB, stats